Good morning. Aloha. Welcome to the Ninth Circuit. I'm here today with my colleague Judge Fletcher on video and Judge Sung. We have several cases that we have submitted on the briefs. Mendoza-Madrigal v. Garland and United States v. Sam are both submitted on the briefs. We will take the other three cases in the order in which they appear on the calendar. The first case on the calendar is Hermosillo v. Garland. I believe both counsel Mr. Ali and Ms. Watson are with us via video. Mr. Ali, whenever you are ready. Judge Fletcher Thank you, Your Honor. May it please the court, good morning, Your Honors. Zulu Ali on behalf of the petitioner. I will submit to the court that the respondent has that the family members suffered. It seems that like in almost any case, there is going to be some sort of underlying cause as it relates to some sort of family membership. And in this particular case, as was provided in the lower court, was that or in the administrative court, I guess I should say, was clearly that the petitioner's father and his five uncles who were members of what was or what is called the auto-defensive group actually were participating in this organization. And I think the primary purpose of this organization was to protect his hometown locally against cartels. And it's very interesting the way that the administrative court actually addressed the issue. I think that the way that the court looked at it was that since the petitioner himself was not necessarily a member of the protected class, in other words, counsel is there any evidence at all in the record that any person, any family member of any member of the auto-defense group was ever harmed? That is anybody who wasn't actually a member of the auto-defense group? Is there any evidence in the record that anyone in that category was ever harmed? I don't think, well, I think that the way that the record reads was that it was a father and his five uncles. Right, but didn't your client indicate to the asylum officer and also to the extent he testified that all of his uncles who were harmed or who were disappeared or killed were all members of the auto-defense group? That's correct, your honor. So, is there any evidence in the record that any person, any family member of an auto-defense group member was ever either threatened or harmed? And your question, I think, your honor, is that was not a member of that particular group? Yes, a relative. Is there any evidence that a relative of the group members like your client was ever harmed or threatened? I don't believe that that was necessarily part of the record. I don't recall him specifically saying that there were any of the relatives that were not part of this particular auto-defense group were actually. I think that the record, to be quite honest, I think that it wasn't necessarily quite clear because I think the way, at least from my reading at the time, was there was also this, I think, maybe statements that there was some, is this, or assisting. So, I think he wasn't quite clear as to whether he was both saying that those who were, there were some that were members of the group and potentially, I believe that there were actually, he kind of interchanged that with talking about those protecting the hometown. Let me ask you this as I could. We know that the father and the uncles were both threatened and some of them killed by the cartel and that we know, or at least we don't have any evidence to the contrary, as to some family members. My question is, and I think the male family members who were neither part of the auto-defense group and nor harmed, do we know anything about, I think we know about the females, at least the ones that you mentioned. How about males? I'm trying to figure out if this guy, your client, was a male, is in, as it were, a category of one. Right. I think the ones that were actually, that were actually harmed was the father and the five uncles. I know that, but the ones who weren't harmed? Oh, we're not, I'm sorry. Are there male family members in that group who were not harmed? You said female groups, your honor? No, I said males. Are there males who are family members, who are not the father and the uncles, who were not harmed? Do we know? No, your honor, we don't. Okay. Not that I know of. If this case were to go before an IJ, would there be an opportunity to develop evidence on that point? I believe so, your honor. I think that we would have an opportunity to address that issue and address the issue of the details of the entire family members and that sort of thing. Because I think that one of the unfortunate issues when you're dealing specifically through these fear interviews, and ultimately going to an IJ who reviews the statements that were made to asylum officers, that sometimes you're not really able to establish or really go into the depths of the issues like you would normally do. I understand. I'm interrupting because the time is going to run on here. Now, I think you represented your client at the second of the fear interviews. Is that correct? That's correct, your honor. And how much opportunity for investigation have you had when you represented him in that second interview before the asylum officer? From my recollection, your honor, I think it was very, very limited because I think at that particular time, and I don't, I believe my client was in custody at that particular time when we went through the interview, and we were very limited in our opportunity to address the, to prepare and get more information. And if we were to say that the IJ made a mistake here in relying on the record in front of the asylum officer and saying that there was no reasonable fear at the screening stage, would you do further investigation? Absolutely, your honor. What investigation would you do? How would you finance it and so on? I'm trying to, I'm just trying to be I think that if we had more, a better opportunity to have more time and more chances to get more details about specifically those individuals that were harmed, as well as more information about other family members and potentially some of their experiences that may or may not be in members of those groups and details from potentially the father and those uncles themselves. So I think that that would provide us with more of an opportunity and more focus on developing our case as far as the family. Realistically, if you had a million dollars, you can go down to this village, you can figure out if there have been family members farmed out, harmed or outside this particular family group, all kinds of you can discover all kinds of stuff. You don't have a million dollars. I do not. So realistically, how much investigation will you be able to do? I think that I mean, obviously, it would have to be just trying to and we're not there. So obviously, it would have to be as much investigation as we can through other means, because obviously, I cannot personally contact them, but obviously through mail, or potentially through email to see if we could get more information, and also potentially information from maybe some other relatives that he may have here in the US. Thank you. Did you want to reserve the remainder of your time? Yes, your honor.  May it please the court, your honors. Morning, Joanne Watson, on behalf of a respondent, the United States Attorney General. And this case really comes, it comes down to nexus. And the record, substantial evidence supports the immigration judge's determination that this he has not shown a nexus to his familial relationship to his uncle. All of these incidents which for me is the core of the case, this comes up to us as a review of an incision by an asylum officer as to whether or not there was reasonable fear. Do we apply the same standard in terms of whether substantial evidence in this case, compared to a full fledged hearing in front of an IJ on an asylum or withholding case? Trying to understand your question, you're asking if it's substantial evidence, whether this would be a whole withholding only proceeding before the immigration judge or just as a different question. This case is coming to us as a review of a reasonable fear of discrimination by an asylum officer. And the question in front of the IJ was whether the asylum officer reasonably found that there was no reasonable fear. This is not the case where in front of the IJ, a reasonable fear determination has been made and we're now in front of the IJ with a full hearing. So what I'm asking you is, how much evidence was this petitioner required to come forward with in front of the asylum officer? As distinct from how much evidence would he have been required to come forward with if this were a full blown hearing in front of an IJ? There's quite a difference. I mean, you'd have an opportunity to submit. This is a much quicker review. The immigration judge, it's a de novo review for the immigration judge, but this court reviews it for substantial evidence. But it's not a full... But it's substantial evidence as to whether or not the asylum officer was right in the screening interview. The immigration judge reviews asylum officer de novo. I understand that. But the question is whether or not the asylum officer was correct at the screening stage in saying that he should be screened out. Well, the immigration judge affirmed it. No, I understand that. But I'm not sure you yet understand my question. This can come up in front of the IJ in two different ways. One, it can be the asylum officer has said no reasonable fear and we're reviewing that fear. Then we get a full blown hearing in front of the IJ as to whether the IJ would find that there's sufficient evidence to withhold. Those are two very different questions. We have the first. Correct. He found no reasonable fear, he affirmed. And so I should think on the plaintiff in the first case, presenting enough evidence in front of the asylum officer is a substantially reduced burden compared to the second case, where he has to convince the IJ in a full blown hearing. You agree with me or not? If it's substantial evidence for... I'm not sure you understood the question. I'm not exactly understanding. I mean, this is like, like I said, I did the question as clearly as I could. Okay. Counsel, let me, let me change gears here a little. I have a question about the cat claim, because there is a cat claim, right? So I'm reading, I'm reading on AR3, what the immigration judge found. And it says the court concurs in the DHS reasonable fear determination because, and then the immigration judge writes out the reasons, right? Correct. But those reasons don't support the denial of the cat claim, right? Because the only thing the immigration judge wrote here is nexus, right? That's, that's all, I can't remember it's a he or a she, but that's all the immigration judge wrote is nexus, right? Correct. And nexus has nothing to do with cat, right? It's the reasonable fear of torture by or with government acquiescence, regardless of nexus, right? Nexus does not apply to the torture claim, but. So if. The IJ check. Go ahead, go ahead. I was going to say nexus is not, is not necessary for the, for the cat claim. Right. But the IJ. No, go ahead. I'm sorry. No, I didn't mean, go ahead. Okay. The IJ checked the box that said the court concurs in the DHS reasonable fear determination because colon. So there's the word on the form because, and then he writes out why, and what he writes doesn't support the immigration officer's cat claim decision. So why, how is it that we can affirm when he doesn't write, I affirm the asylum officer's determination, including because, he writes because, but because doesn't work for cat. So how can, how can we affirm, how can we look through to the immigration officer's decision, the asylum officer's decision on cat when what the IJ wrote doesn't support the cat determination? Well, the IJ checked off that he was agreeing with the cat claim of the asylum officer. So you can go back to see the reasoning of this asylum officer in this case. But I don't understand that because it says because, and if it had said because and then wrote after it for all the reasons the asylum officer gave, that would be one thing, but it's because of what he wrote. And then he also checked, there is no additional reasoning. Now, I know this isn't raised in the briefs. The Fourth Circuit says this doesn't work. And the government had agreed this doesn't work in a Fourth Circuit case. There's a Ninth Circuit case that may or may not say this does work, but is it the government's position that if what the IJ wrote doesn't support the cat determination, that as a matter of law, we can just look through to what the asylum officer wrote, even though what the IJ wrote does not support that determination? In this instance, I would say because it's agreeing with the asylum officer, that he doesn't have a reasonable possibility of torture, that you could look to the asylum officer's reasoning in this. So why wouldn't there be a reasonable fear of torture here with the acquiescence of the government, given that his relatives complained to the government about it, and the government said, we're not going to do anything because we're afraid they're going to kill us too, and he had five uncles that are dead or disappeared, given you need, what is it, a 10% chance of torture and nexus is not relevant here? Why isn't this a reasonable fear of torture, even if you're right on withholding? You even have to look to if there's been any torture in the past. Petitioner hasn't lived there in 20 years. He's never been harmed in the past. I understand he's never been harmed, but five of his uncles were either killed or disappeared. And why in a 10% look, isn't it reasonable for him to say, all of my relatives have been murdered, I'm afraid I'm going to be murdered too, and the government hasn't done anything, and my relatives asked the government about it, and they said, we're not going to do anything because they're going to kill us too if we do. Why doesn't that meet the 10% threshold? Well, they hadn't reached out to government or local police since 2012. There's no recent evidence that the government or the police would acquiesce to his torture. He hasn't shown that they've made any effort whatsoever recently. Counsel, isn't government acquiescence something that Petitioner could show through country conditions evidence, though, that would be something that his counsel could access in a full-blown merits hearing? Yes, that would be a factor. There's several different factors, whether he could relocate, you know, evidence of past torture, country conditions, and you have to show us a specific threat to Petitioner. And he testified that these cartel members, they're not even aware that he exists, and he testified that he didn't plan on being a member of the auto-defensive group. But he also testified that the cartels would find out. Sorry, Judge Fletcher. But he apparently did indicate that he planned on being a member of the family, meaning that there's no escaping that. Yeah, that he is a member of the family, but if you get back to that with the holding claim, all of these uncles were harmed in their capacity of members of the auto-defense group, protecting the community, having... I understand that, but it seems to me the only rational reason why he would be tortured is also because he's a family member. But he hasn't shown one person in a similar situation that that's happened to, that's come back from the United States. Which goes back to my original question. At this stage, where it's just a screening interview, how much does he have to show? More than he's shown. Well, he did testify that the cartels have a practice of targeting family members. And it's also unknown, he said, why one of his uncles was killed. It was possibly because of his family relationship, possibly because he was an auto-defense member, possibly a mixed motive. The problem is we don't know for sure what the motive of the cartel was. If, for example, he had country conditions evidence showing that cartels target family members of community defense groups, which his counsel could, in theory, collect and present at a full-blown merits hearing, wouldn't that be enough to substantiate his claim, even if one of his own relatives had not been harmed? But if he could show that other family members of other auto-defense members were harmed? That's definitely a factor that could be considered in a full-blown hearing. But at the screening level here, he just hasn't shown any specific threats to him. Are you familiar with this court's case holding in Alvarado Herrera regarding? Yes, yes, Your Honor. So why isn't this type of country conditions evidence something that he should be allowed to present at a full-blown merits hearing?  At this preliminary stage, which is meant to just screen out frivolous claims. I know. And Alvarado, I mean, that case is highly distinguishable from the instant case. We're talking about somebody who was a bodyguard for a business owner. MSA team gang members came in with guns, wearing police uniforms and badges, shot the business owner, shot at the bodyguard who was the petitioner in that case. And he went into hiding and came to the United States. While he's in hiding, two more bodyguards were shot. I mean, we don't have this. This is a completely different case. This person hasn't been in the United States for 20 years, was never harmed. But we do have a credible testimony that five of his family members have been killed or disappeared or seriously harmed in some way. And the holding of Alvarado Herrera was that the petitioner's general assertion about police collusion with the gangs was not proven on the record by his testimony, but was something he should be given the opportunity to prove through corroborating evidence at a full-blown merits hearing. That's true. But that also said that it was the gang members dressed as police officers with badges. That was like the link. That was the fact that they looked at that inferred a full hearing on the cat claim. And we just don't have that here. You know, what bothers me here is that this seems to be, maybe without intending to do so, but a blurring between the two types of cases that I posited. This case, which is a screening interview where the issue is frivolous, and the other case in which is a full-blown hearing. You keep arguing as if this were a full-blown hearing. It's not. I'm not arguing as a full, but from the screen, you have to show the nexus for withholding. Well, how much do you have to show? Do you have to show that it's at least a possibility and it's not frivolous? That's very different from showing what you have to show in a full-blown hearing. He hasn't shown all of his uncles were harmed in their capacity as auto defense members in protecting the community. Well, the government doesn't actually know that, right? Because he testified that it's unclear why one of his uncles was killed. It's possibly to deter the leader of the auto defense group, and it was possibly based on his own activity, or possibly even a mixed motive. But the government is assuming that it's only because of his own activity. But that's not actually something the government knows at this point either. Is that correct? Well, I mean, if you look at when he was talking about his uncle, Gabriel Hermosillo, and when asked why he was killed, he said, because he's part of the auto defense team. And when asked if it was a way to get to his uncle, he stated, to be honest, I don't know what the real reason was, but I know they were ambushed. That doesn't compel a finding that that uncle was harmed because he was a member of that family. But that's not the question. The question is, is this frivolous such that he should not be allowed to go to a full-blown hearing after a further opportunity to develop evidence? Well, it's a screening mechanism for somebody who's in a reinstated removal order, or was already removed once. I understand that. And they don't get the full-on... But the standpoint here is, is it frivolous for him to make a withholding or a cap claim? There was no frivolous finding here. But... Well, in order for the asylum officer to deny, he has to find that it's frivolous. That's what the screening interview is all about. Well, it's whether he has a reasonable fear, and he found he didn't have a reasonable fear. He didn't find it, he didn't make a frivolous. And the reasonable fear finding at the asylum officer's stage is designed to screen out, and this is what I say, is to screen out frivolous cases. So, you're telling us that we have to conclude on this record that this is a frivolous case, and that further evidential development would be frivolous? Correct, that he hasn't shown a reasonable fear to have a further proceeding. And further discovery. Correct. Okay. We're way over time because of our questions. Judge Fletcher, Judge Sung, do you have any additional questions? All right, Mr. Ali, we'll give you two minutes. Okay, thank you, Your Honor. I really didn't have too much more to add other than I did want to be clear with regards to the findings of the immigration judge. I think that there was, it was clear that the only finding that he made was that the issue of nexus between the family group membership and harm that the family members suffered. I think that there was no, and he said that was the reason that there was no reasonable fear on account of a protected ground, and there was no other finding by the immigration judge. So I think that to the extent that there is an issue regarding the Catt claim, I don't believe that there was no finding by the immigration judge regarding the Catt claim. Counsel, I'm sorry to interrupt you during your rebuttal, but you did not make that argument in your brief. I did not, Your Honor. I did not. I did not. The only thing that I addressed is I only addressed the issues based upon the findings of the immigration judge. And again, with regards, just going back to my whole issue of the family group membership and the nexus between the harm that the family members suffered. Again, I do believe that it is rational, and I think it is reasonable that if the respondent, especially if he's given an opportunity to develop his case and have a full-blown hearing, I think that it would be reasonable that he would be able to at least establish, or should be given an opportunity to establish the issues addressed by the immigration judge. And with that, I submit, Your Honor. All right. We thank both counsel for their arguments, and the case just argued will be submitted.
judges: FLETCHER, BENNETT, SUNG